ADDEN, J.,
 

 delivered the opinion of the Court.
 

 The Court is of opinion, that although the appellant when he filed his answer in this cause, was ignorant of *all the facts in regard to the title of his intestate to the slaves sold to her by John R. Archer, and described in his bill of sales of the 25th of December 1818, he nevertheless relied on the bill of sale as shewing an absolute title in his intestate to the slaves, and that his intestate had agreed to take for her dower right for that portion of her dower slaves which would belong to Frances C. Archer wife of John R. Archer, at the death of the intestate of the appellant, the sum of 2000 dollars to be paid in slaves; and that said bill of sale was executed in consideration of her having previously agreed to relinquish her right in said dower slaves.
 

 It appears by the decree of the County court of Amelia, of the 29th of May 1818, that the commissioners who were appointed to receive from the intestate of the appellant said dower slaves, and make a division thereof, were directed to allot to the intestate of the appellant one sixty-fourth part of said dower slaves as mother and distributee of her deceased daughter Harriet. The report made by said commissioners shews that the one sixty-fourth part so allotted to the intestate of the appellant as her distrib
 
 *171
 
 utable share of her deceased daughter’s proportion of said dower slaves, was of the value of 1580 dollars; and that the residue of said dower slaves were divided amongst the other distributees of the said John Tabb and said Harriet; whereby each of said distributees received one sixty-fourth part of the slaves as a distributee of said Harriet. And the report further shews, that the slaves allotted to said John R. Archer and wife exceeded the just amount by 211 dollars, which John R. Archer was to pay for owelty of partition. And thus the fact was disclosed by said decree and report, that of the slaves allotted to John R. Archer and wife, he was entitled to receive and did receive, in his own right, unaffected by the marriage articles between himself and wife, slaves to the value of his distributable share in said Harriet’s estate *and the said sum paid by him for owelty of partition, making together the sum of 1791 dollars; and which, therefore, he had a clear right to dispose of. And as the decree of the County court of Amelia was filed as an exhibit and read at the hearing, as appears by the interlocutory decree of the 19th day of June 1832, the facts so disclosed were then in the record, and the appellant is entitled to the benefit thereof at any subsequent hearing, and upon the appeal bringing up the record.
 

 The Court is further of opinion, that it sufficiently appears the conveyance of the slaves by the bill of sale of the 25th December 1818, was nothing more than the execution of the agreement and arrangement previously entered into between the parties referred to in the bill filed in the County court of Amelia, as the arrangements made for compounding their respective interests in said slaves; and the surrender of the slaves, and the release of the intestate of the appellant, was made on the consideration that she should retain slaves to the value of the sum of 2000 dollars agreed to be paid to her b3r each of the distributees, for the surrender of the whole of said dower slaves. And if the said John R. Archer, in disregard of the terms of the marriage articles, after such surrender of the dower slaves, should have improperly disposed of a portion thereof, such misconduct could not affect the title of the appellant’s intestate, acquired under an agreement preceding the surrender of any of the slaves.
 

 The Court is further of opinion, that the arrangement by which the beneficiaries under the marriage articles obtained the immediate possession and enjoyment of the dower slaves of the value of 14,039 dollars, for the small additional consideration above the sum of 1791 dollars, being the difference between that sum and the sum of 2200 dollars ; the consideration expressed in the bill of the sale of the 25th of December 1818, was so *clearly beneficial to all concerned, as to constitute a proper and reasonable charge against the trust estate; and after the beneficiaries under said marriage articles have received or might have received the profits of said dower slaves from the time of such surrender, it would be unjust to permit them to disturb the title acquired by the intestate of the appellant, to the slaves conveyed to her in consideration of her surrender and relinquishment; the said Archer having an absolute right to convey to the extent of 1791 dollars, and the residue of the consideration named being inconsiderable when compared with the advantages accruing to the beneficiaries by the arrangement.
 

 The Court is therefore of opinion, that so much of the interlocutory decree of the 19th June 1832, as perpetuated the injunction enjoining the appellant from selling the slaves named in said bill of sale of the 25th December 1818, and the increase of the females, and directed a surrender of said slaves and their increase to the trustee thereby appointed, and ordered the appellant to account for the hires thereof, is erroneous.
 

 The Court is further of opinion, that the slave Sye or S3rphax in the proceedings mentioned, being shewn to have been one of the dower slaves allotted to John R. Archer and wife, the sale made of him by said Archer was against the terms of the marriage articles; and there is no error in the interlocutory decree of the 12th July 1842, directing him to be surrendered to the trustee in said decree mentioned.
 

 The Court is further of opinion, there was no error in said decree in holding that certain accounts directed to be taken by the interlocutory order of the 23d June 1832, were improvidently ordered in this cause, and refusing to decree in relation thereto.
 

 The Court is further of opinion, that the interlocutory decree of the 23d December 1842, directing that John R. Archer do render an account of the hires and *profits of the slave Syphax and Philip and family, stated to have been received by him during the continuance of the life estate of the appellant’s intestate, is erroneous, the slaves being in fact held by said intestate.
 

 And the. Court is further of opinion, that if under the pleadings in this cause, an account could properly be directed in regard to the price alleged to have been paid to John R. Archer for the slave Syphax and his hires and profits, the question as to who would be entitled to the hires has not been put in issue; and the circumstances of the case shew that no account could lead to any beneficial result.
 

 The Court is therefore of opinion, that said decrees in the particulars herein before declared to be erroneous, be and the same are hereby reversed with costs to appellant; and that the same in the particulars herein declared not to be erroneous, be affirmed. And the cause is remanded with instructions to dissolve the injunction awarded on the 25th of February 1829, in respect to the slaves mentioned in the bill of sale of the 25th December 1818, and the increase of the females; to order a restoration of said slaves, together -with the increase of the females, to the appellant; and
 
 *172
 
 for an account and payment over to the' appellant, of the hires and profits thereof from the time he surrendered the same in pursuance of the interlocutory decree of the 19th June 1832, and also to carry into effect so much of the decree of the 12th July 1842, as directed the surrender of Sye or Syphax to the trustee therein named, if he has not been surrendered; and that as to all other matters the bill be dismissed.